UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

SHARON COWGER,

            Plaintiff,

vs.

METROPOLITAN LIFE INSURANCE COMPANY,

            Defendant.

------------------------------------------------------

CASE NO. 1:07-cv-01159

OPINION AND ORDER
[Resolving Docs. 31, 32, 39, 40.]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      In this ERISA case, the Court decides whether to uphold the Defendant's denial of the Plaintiff's claim for long term disability benefits.

      The Plaintiff, Sharon Cowger ("Cowger"), brings this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). [Doc. 1.]  On November 19, 2007, the parties filed opening briefs, based on the administrative record, addressing the Plaintiff's claim.  [Docs. 31, 32.]  On December 17 and 18, 2007, the parties filed reply briefs.  [Docs. 39, 40.]

      For the reasons presented below, the Court **UPHOLDS** the Defendant's determination and **DENIES** the Plaintiff's claim.

**I. Background**

The instant case arises out of the Defendant's determination that the Plaintiff is not entitled to long term disability benefits because she is not disabled as defined in the applicable benefits plan.

Plaintiff Cowger began working with FirstEnergy Service Company ("FirstEnergy") as a nuclear specialist in 1994. [AR 295; Doc. 37 at 86.] Her work was sedentary and "required her to work in a seated position for the majority of her day, frequent fingering, hearing and visual acuity, no lifting, carrying, pushing/pulling, occasional turning, walking, climbing stairs, and reaching (AR 249)." [Doc. 32 at 1.] According to Cowger, she stopped working in late July 2004 "due to a combination of impairments, which included artherosclerosis, arteriosclerosis, chronic heart failure, metatarsalgia, bursitis, proliferative diabetic retinopathy, diabetes mellitus and nephropathy (AR132-133)." [Doc. 32 at 1-2.; Doc. 30.] In the personal profile she submitted to MetLife, Cowger reported a quadruple bypass in 2003 and current shortness of breath, chronic fatigue, acute feet and leg swelling, edema, sleep apnea, and type 2 diabetes. [AR 304, Doc. 37 at 95.] These symptoms and impairments formed the basis of her long term disability benefits claim.

The FirstEnergy Corp. Long Term Disability Plan ("Plan") is an ERISA-governed employee welfare benefit plan that provides long term disability benefits to eligible FirstEnergy employees. [Doc. 30; AR 1-41; Doc. 35 at 1-41.] The Plan administrator is FirstEnergy. [AR 37; Doc. 35 at 37.] Defendant Metropolitan Life Insurance Company ("MetLife") is the Plan's fiduciary. [Doc. 30; AR 38-39; Doc. 35 at 38-39.] Metlife has discretionary authority to determine eligibility under the Plan:

Case No. 1:07-cv-01159
Gwin, J.

## Discretionary Authority of Plan Administrator
## and Other Plan Fiduciaries

> In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

[AR 39; Doc. 35 at 39; AR 64-66; Doc. 35 at 64-66.]

> Under the Plan, "disability" means:
>
> that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
>
> 1. during your Elimination Period and the next 12 month period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy; or
>
> 2. after the 12 month period, you are unable to earn more than 80% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience, and Predisability Earnings.

[AR 17-18; Doc. 35 at 17-18.]

Cowger believed she was disabled under the Plan and accordingly applied for long term disability benefits. [AR 303-309; Doc. 37 at 94-100.] On September 2, 2005, the Defendant sent the Plaintiff a letter denying her benefits, effective July 29, 2005.1 [AR 248-50; Doc. 37 at

---

1 This letter corrected a similar denial letter that MetLife sent to Cowger on August 15, 2005 that mistakenly denied benefits to Cowger effective August 9, 2005 rather than July 29, 2005. [AR 251, Doc. 37 at 42.] The denial is effective July 29, 2005, twelve months following Cowger's departure from FirstEnergy due to her alleged disability, because the Plan requires a twelve month "elimination period" of disability before a participant can receive long term disability benefits. [AR 13, 17; Doc. 35 at 13, 17.] During the initial twelve month period, participants may be eligible for other types of benefits. [Doc. 30; AR 43; Doc. 35 at 43.] While Cowger applied for long term disability benefits during the elimination period, she was receiving some form of alternative benefit in the form of salary continuance or sick leave. [AR 295; Doc. 37 at 86.]

Case No. 1:07-cv-01159
Gwin, J.

39-41.]  After reviewing the evidence Cowger submitted, the nurse consultant's conclusions based on the evidence submitted, and the Plaintiff's job requirements, MetLife determined that Cowger's impairments did not prevent her from performing her previous sedentary work. *Id.*

On September 26, 2005, Plaintiff Cowger notified MetLife that she planned to appeal its denial of her claim. [AR 243-45; Doc. 37 at 34-36.] Per MetLife's suggestion, the Plaintiff provided additional information for review of her claim. [AR 230-39; Doc. 37 at 21-30.] MetLife then asked three Board Certified physicians ("reviewing physicians") to review the records Cowger provided both before and after the initial denial decision. Two of the reviewing physicians also spoke to Cowger's treating doctors via telephone. The reviewing physicians reported that her treating doctors said that Cowger was able to perform her previous sedentary work. [AR 219, 225; Doc. 37 at 10, 16.] All three reviewing physicians ultimately concluded that Cowger was capable of performing her previous work. [AR 143, 220-21, 225-26; Doc. 36 at 50; Doc. 37 at 11-12, 16-17.] MetLife also reviewed the input of a Vocational Rehabilitation Consultant who determined that Cowger's job was sedentary and consisted mostly of data entry. [AR 134; Doc. 36 at 41.] On May 25, 2006, MetLife upheld its previous denial of Plaintiff's claim for long term disability benefits, again, because it concluded that Cowger could perform her previous work. [AR 132-34; Doc. 36 at 39-41.]

On April 19, 2007, Plaintiff Cowger filed a complaint in this Court alleging that while working for First Energy, she became "permanently and totally disabled pursuant to the Plan" and that "Defendant MetLife, without reasonable justification and in bad faith, has failed and refused to properly and adequately review Plaintiff's medical information, has refused to revise

–4–

Case No. 1:07-cv-01159
Gwin, J.

its determination that Plaintiff is not entitled to Long Term Disability benefits, and has failed and refused to grant Plaintiff benefits to which she is entitled under the Plan." [Doc. 1 at 2-3.] With its answer on July 10, 2007, Defendant denied the Plaintiff's allegations. [Doc. 3.] On November 19, 2007, the parties filed opening briefs addressing the Plaintiff's claim. [Docs. 31, 32.] On December 17 and 18, 2007, the parties replied to each other's briefs. [Docs. 39, 40.]

## II. Arbitrary and Capricious Substantive Review

Because the Plan gives Metlife discretion to interpret the terms of and determine eligibility under the Plan [Doc. 30; AR 39, 64-66; Doc. 35 at 39, 64-44], the standard of substantive review in this case is whether the Defendant's benefits determination was arbitrary and capricious. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991). The arbitrary and capricious standard is the least demanding form of judicial review of an administrative decision. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). A decision regarding eligibility for benefits is not arbitrary and capricious if the decision is "rational in light of the plan's provisions." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996) (citation omitted). Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotations and citation omitted); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir.1998) (en banc).

Case No. 1:07-cv-01159
Gwin, J.

However, "merely because our review must be deferential does not mean our review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005).

In determining whether the Plan fiduciary's decision was arbitrary and capricious, a court is limited to reviewing the evidence contained within the administrative record. *Id.* at 378-79.

The Court finds that MetLife's conclusion that Cowger was not disabled as defined in the Plan was not arbitrary and capricious. With its final denial of Cowger's claim, MetLife predominantly relied on three non-treating physicians' reviews of Cowger's medical records.2 [AR 132-34; Doc. 36 at 39-41.] Dr. David Marder, M.D., a Board Certified physician in occupational medicine, concluded, "Ms. Cowger is capable of working at a sedentary level." [AR 226; Doc. 37 at 17.] Dr. Michael J. Rosenberg, M.D., a physician Board Certified in internal medicine, cardiology and interventional cardiology, also concluded that Cowger is "capable of light/sedentary work . . . on a full time basis." [AR 220; Doc. 37 at 11.] He also completed a physical capacity evaluation and determined that Cowger was not restricted in her ability to sit. [AR 222; Doc. 37 at 13.] Finally, Dr. George M. Yanik, Jr., M.D., Ph. D., a Board Certified ophthalmologist, found that Cowger's visual acuity is "compatible with light desk duty or clerical duty and the like." [AR 213; Doc. 37 at 4.] After the Plaintiff submitted additional

---

2 MetLife also relied on the findings of a Vocational Rehabilitation Consultant who "determined that this job [nuclear specialist] consisted primarily of a significant amount of data entry, and was classified as a sedentary position." [AR 134; Doc. 36 at 41.] Plaintiff Cowger does not challenge this finding.

Case No. 1:07-cv-01159
Gwin, J.

evidence following their initial conclusions, Dr. Marder, Dr. Rosenberg, and Dr. Yanik repeated their previous findings that the evidence in the record indicates that Cowger is able to perform sedentary work.[3]  [AR 138, 151, 153; Doc. 36 at 45, 58, 60.]

Two of the reviewing physicians contacted Cowger's treating physicians, Dr. Prakash K. Yakkundi (Cowger's primary care doctor) and Dr. Chetan Patel (Cowger's cardiologist), for clarification on her medical records.  In March 2006, Dr. Rosenberg contacted Dr. Yakkundi and Dr. Patel, and Dr. Marder contacted Dr. Yakkundi.  Dr. Rosenberg and Dr. Marder reported that both of these treating physicians said Cowger was capable of sedentary work.  [AR 219, 225; Doc. 37 at 10, 16.]

Plaintiff Cowger critiques MetLife for allowing the reviewing physicians to contact her treating physicians by telephone after Cowger attempted to revoke her consent permitting MetLife to contact her doctors, except in writing.[4]  [Doc. 32 at 9-10.]; *see also* [AR 128-29; Doc. 36 at 35-36.].  However, the Plan requires participants to "provide signed authorization for us to obtain and release medical . . . information."  [AR 28; Doc. 35 at 28.]  It further states that participants must provide "[a]ny other material information related to your Disability which may be requested by us."  [AR 14, Doc. 35 at 14.]  In exchange for MetLife's promise to provide long

---

[3] Various physicians in the record suggest some accommodations to help Cowger work with her difficulties.  These include keeping her legs elevated, wearing support stockings, and changing positions frequently.  *E.g.*, [AR 220; Doc. 37 at 11.] Based on the evidence described here, especially that some of the same doctors suggesting these accommodations also found Cowger able to work, the Court finds that MetLife acted reasonably in not interpreting these suggested accommodations as proof that Cowger was unable to return to her previous work.  The Court also draws attention to FirstEnergy's policy of providing reasonable accommodations to its employees. [AR 2, 35; Doc. 35 at 2, 35.]

[4] In a letter dated June 15, 2006, Plaintiff's counsel suggests that these phone calls constitute Health Insurance Portability and Accountability Act of 1996 ("HIPAA") violations. [AR 126; Doc. 36 at 33.] However, Cowger has not indicated that she has pursued any privacy-related legal claims either in her complaint or in any other legal forum–nor has she cited any privacy-related legal authority in her briefs.  With no legal argument from the Plaintiff on this point, the Court will not construct Cowger's argument for her.

Case No. 1:07-cv-01159
Gwin, J.

term disability benefits to eligible participants, participants promise to provide MetLife access to the medical information it needs to make its eligibility determinations. The authorization Cowger signed for MetLife on March 23, 2005 states, "Your refusal to complete and sign this form may affect your eligibility for benefits under your employer's disability plan." [AR 255, Doc. 37 at 46.] That authorization permitted the release of information "in the format requested, including by telephone, fax or mail." *Id.* The Plaintiff offers no authority to suggest that it may revoke such authorization, thereby arguably breaching her obligation under the Plan, without jeopardizing the Plan's obligations to pay her, should she be so eligible.

Cowger challenges the weight afforded to the treating physicians' alleged comments in these phone conversations because their accuracy cannot be verified. [Doc. 32 at 9.] However, the Plaintiff provides no evidence from the treating physicians indicating that they felt their comments were misrepresented. Without any evidence to the contrary, the Court finds that two of Cowger's treating physicians, Dr. Yakkundi and Dr. Patel, in March 2006, believed that Cowger was able to perform sedentary work.

Even without the evidence that Cowger's treating physicians explicitly agreed with the reviewing physicians' conclusions that she is able to work, the Court finds that the reviewing physicians' reports provide enough evidence supporting MetLife's finding of no disability to withstand arbitrary and capricious review.

Cowger also contends that MetLife granted too much weight to the reviewing physicians'

Case No. 1:07-cv-01159
Gwin, J.

conclusions.5 [Doc. 32 at 8.] The Court disagrees. As mentioned above, the evidence shows that Cowger's treating physicians agreed with the reviewing physicians' conclusion that Cowger was able to work. Again, the notable absence of evidence from the treating physicians indicating that their views were misrepresented suggests that the reviewing and treating physicians' conclusions are indeed consistent. Therefore, MetLife did not act arbitrarily or capriciously in relying on the conclusions that the reviewing and treating physicians shared.

Moreover, after reviewing the record, the Court finds scant evidence to suggest Cowger could not return to her previous work. Cowger's parenthetical list of pages of alleged support reveals little to help her. [Doc. 32 at 6; Doc. 40 at 1.] Cowger emphasizes what she calls Dr. Yakkundi's finding that Cowger is "incapable of doing any sort of work job." [AR 195; Doc. 36 at 102.] While it is true that a doctor did make this finding in August 2005, contrary to Cowger's representation, the doctor who made this finding was Dr. Michael A. Retino (a doctor who Cowger does not list as a treating physician and is not found anywhere else in the record)[6], not Dr. Yakkundi.[7] *Id.*

There is some evidence favorable to Plaintiff from Dr. Yakkundi in the record though. In March 2005, Dr. Yakkundi reported that he told Cowger to cease working in August 2004, and he listed the marked limitations she faced. [AR 297-99, Doc. 37 at 88-90.] However, in that

---

[5] In this section of her brief, Cowger asks the Court to decrease the weight afforded to the reviewing physicians' conclusions because of their alleged conflict of interest and the decision to perform file reviews rather than physical exams. [Doc. 32 at 8.] While the Court considers these factors as part of its arbitrary and capricious review, in the instant case, the Court finds these factors unable to overcome the evidence in the record in favor of MetLife's decision as further described below.

[6] According to the report, Dr. Retino, an orthopedic surgeon, works in the same practice as Dr. Stevens, a podiatric surgeon, who Cowger does list as a treating physician. [AR 195; Doc. 36 at 102.]

[7] Rather, Dr. Yakkundi received a carbon copy of the report as indicated at the bottom of the document. [AR 195; Doc. 36 at 102.]

–9–

Case No. 1:07-cv-01159
Gwin, J.

same report, Dr. Yakkundi also indicated that he advised Cowger to return to part time work in March 2005. *Id.*  In an August 2006 patient's physical capacity report, Dr. Yakkundi again says that Cowger is limited in lifting, carrying, standing and walking; that she needs to elevate her legs to chair level; that she needs additional rest times beyond breaks every two hours; and that she cannot push or pull.  [AR 161-162; Doc. 36 at 68-69.] Even while keeping this evidence in mind, the doctor's March 2005 directive to Cowger to return to work part time in combination with his view that she could work as expressed to Dr. Marder provide enough evidence to support MetLife's conclusion that Cowger could perform her previous work.8

Thus, when viewing the record as a whole, the Court finds that MetLife's decision was not arbitrary and capricious.9

### III.  Section 1133 Procedural Review

Section 1133 of ERISA provides:

In accordance with regulations of the Secretary, every employee benefit plan shall-

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

---

8 The Court also notes an August 2004 note from Dr. Banna's office saying that, according to her doctor who had treated her from February 2003 to the present, Cowger could return to work on August 10, 2004 with no restrictions. [AR 283; Doc. 37 at 74.] (It is unclear who signed this note.)

9 Cowger also claims that the reviewing physicians did not evaluate Cowger holistically; rather, she says that each reviewing physician only assessed Cowger based on his or her specialty.  She argues that even if her impairments do not render her disabled when viewed in isolation, they render her disabled when considered collectively.  The Court incorporates its responses to the evidence Cowger presents above and repeats that this evidence is sufficient to support MetLife's decision under arbitrary and capricious review.

Case No. 1:07-cv-01159
Gwin, J.

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 ("Section 1133").

"The 'essential purpose' of § 1133 is twofold: (1) to notify the claimant of the specific reasons for a claim denial, and (2) to provide the claimant an opportunity to have that decision fully and fairly reviewed by the fiduciary." Houston v. Unum Life Ins. Co. of America, 246 Fed.Appx. 293, * 7 (6th Cir. 2007) (citations omitted). The Sixth Circuit applies a "'substantial compliance' test in deciding whether denial or termination notices meet the requirements of § 1133." Id. (citations omitted). Under this test, "when claim communications as a whole are sufficient to fulfill the purposes of Section 1133 the claim decision will be upheld even if a particular communication does not meet those requirements." Kent v. United of Omaha Life Ins. Co., 96 F.3d 803, 807 (6th Cir.1996) (citing cases). The Court reviews *de novo* whether MetLife substantially complied with ERISA's Section 1133 procedural requirements. Id. at 806.

Plaintiff Cowger claims that MetLife denied her a "full and fair review . . . of the decision denying her claim" under Section 1133 because MetLife changed its rationale for denying her claim from its initial decision to its final decision and therefore, she never had the opportunity to address the new rationale presented in the final denial letter. [Doc. 32 at 7-8.] The Plaintiff says that during the appeal, MetLife relied, for the first time, on the reports of three additional non-treating physicians who reviewed her prior and newly submitted evidence. *Id*. Cowger argues that because MetLife based its ultimate denial of her claim on these reports that

–11–

Case No. 1:07-cv-01159
Gwin, J.

surfaced for the first time on appeal, she "should have been afforded the opportunity to see the independent physician consultant reports and . . . to address the opinions expressed therein." *Id*.

At the outset, the Court finds that the reasoning underlying MetLife's initial denial and ultimate denial on appeal was the same. With MetLife's initial denial on September 2, 2005, it summarized the evidence reviewed and then explained:

> Based on the medical information provided by the [sic] your current treating sources, there is no medical evidence to suggest a significant functional impairment or support the severity of a medical condition that would preclude you from performing your job.
>
> Therefore, your claim for Long Term Disability benefits has been denied since the medical documentation received does not support a level of symptom severity which would preclude you from performing your own job.

[AR 248-50; Doc. 37 at 39-41.] With MetLife's ultimate denial on May 25, 2006, it again summarized the evidence it considered and explained:

> In summary, based upon a thorough review of Ms. Cowger's claim file and the opinions of the reviewing medical consultants, we find that the available information does not support the presence of a physical condition that would have prevented Ms. Cowger from returning to work on a full-time basis at her sedentary position as of July 29, 2005. Therefore, the claim decision to deny disability benefits was appropriate and remains in effect.

[AR 132-34; Doc. 36 at 39-41.] With both denials, MetLife found that the evidence Cowger produced was insufficient to establish a condition severe enough to preclude her from performing her sedentary work as a nuclear specialist.

The only difference Cowger alleges between the initial and ultimate denial of her claim is the addition of the reports by the three reviewing physicians.[10]

---

[10] Cowger makes no other argument involving the procedural requirements set forth in ERISA's statute and regulations.

–12–

Case No. 1:07-cv-01159
Gwin, J.

The Court first notes that the Plan puts participants on notice that non-treating physicians will review claimants' medical records as part of the appeals process:

> If the initial denial is based in whole or in part on a medical judgment, MetLife will consult with a health care professional with appropriate training and experience in the field of medicine involved in the medical judgment.  This health care professional will not have consulted on the initial determination, and will not be a subordinate of any person who was consulted on the initial determination.

[AR 39; Doc. 35 at 39.]  In a September 30, 2005 letter, MetLife specifically notified Cowger's counsel, "Once your complete appeal has been submitted, your client's claim will be referred for an independent claim review."  [AR 242; Doc. 37 at 33.]  Without reason to suggest otherwise, the Court considers this additional review a generally protective feature in favor of the claimant.

Another district court responded to an argument resembling Cowger's from a claimaint saying she had not received copies of the Plan's internal medical evaluations prior to the denial decision:

> Plaintiff appears to be contending that notice under § 1133 means providing copies of all the medical evidence upon which the Plan relied in making its determination. The Court is aware of no authority that would support such a contention. Notice under § 1133 of the specific reasons for denial has never been interpreted by the courts to require a Plan to provide the claimant with a copy of the full administrative record. Neither does notice require a Plan to explain its actions in response to demands presented by Plaintiff or her counsel. The burden is not on the Plan to show that a claimant is not disabled, but on the claimant to show that she is disabled.

Dutton v. Unum Provident Corp./Paul Revere Corp., 170 F.Supp.2d 754, 760 (W.D. Mich. 2001). The Court agrees with its fellow district court that MetLife need not provide Cowger with its reviewing physicians' reports before it makes its final decision.  The Court further finds that Cowger had sufficient notice of the basis of her denial as well as an adequate opportunity for a

–13–

Case No. 1:07-cv-01159
Gwin, J.

full and fair review on appeal. Therefore, MetLife substantially complied with ERISA's procedural requirements.

Even if the Court found that MetLife should have provided the reviewing physicians' reports to Cowger before its decision as the Eighth Circuit found in *Abram v. Cargill Inc.*, 395 F.3d 882, 886 (8th Cir. 2005), the Court would find remand unnecessary in this case. In the face of three reviewing physicians' reports indicating that Cowger can perform her previous work, with conclusions supported by two of Cowger's treating physicians, Cowger offers no evidence to suggest she could prove MetLife's decision to be an abuse of discretion. *Kent*, 96 F.3d at 807 (where there was substantial compliance but not technical compliance with ERISA's procedural requirements, "additional evidence is only pertinent to the extent that it shows that the fiduciary's decision was an abuse of discretion" and "[s]uch a conclusion is patently untenable in this case because much, if not all, the objective medical evidence supports the conclusion that plaintiff was not disabled"). Accordingly, the Court finds that a remand under these circumstances would be "a useless formality." *Id*.

### IV.  Conclusion

For the reasons discussed above, the Court **UPHOLDS** the Defendant's determination and **DENIES** the Plaintiff's claim.

IT IS SO ORDERED.

Dated: February 6, 2008                             s         *James S. Gwin*
                                                    JAMES S. GWIN
                                                    UNITED STATES DISTRICT JUDGE

–14–